Good morning and may it please the court. On the date at issue, October 22nd, 2022, two constitutional principles were clearly established in the law. First, that the curtilage and the home are one in the same for Fourth Amendment purposes. And second, that there was no stand-alone community caretaker exception that applied to the home, to the curtilage. And what the Supreme Court said in the Coniglia case in 2021 was that because there's no community caretaker doctrine that applies to the home, it would not justify a warrantless search or a seizure in the home. The Supreme Court previously in Collins against Virginia in 2018 said that the curtilage and the home are one in the same. So combining these two legal principles that are clear under the law, the district court below erred by granting qualified immunity in the form of summary judgment to the defendant in this case. Now in 2002 in Hope against Pelzer, the US Supreme Court made crystal clear that the clearly established law inquiry is no longer this kind of perceived, their words, hunt for prior cases with virtually identical facts. The question was whether the official, the law enforcement officer in this case, had fair notice that his conduct was unconstitutional. And in this case, the law enforcement officers had clear notice that entering Mr. Thompson's gated backyard, entering the curtilage of his house to assist two people, neither of whom even claimed to be the owner of the motorcycle at issue, to take that motorcycle away from his possession when he wasn't even home in the first place, based on an on-the-spot assessment without a court order, was patently unconstitutional. Now as a practical matter, there was no dispute in the court below that law enforcement officers did not have a search warrant and that no exception to the search warrant applied. They readily conceded that under oath and depositions. Does the automobile exception have any role to play here, given that the motorcycle is mobile? No, Your Honor, for two reasons. First of all, the under oath testimony, and this was the summary judgment standard in the light most favorable to the non-moving party, but the under oath testimony by the law enforcement officers at issue was that they were not in any way, shape, or form relying on an exception to the search warrant requirement. They didn't believe they had probable cause. They actually outright denied that they were performing any sort of criminal investigation. Now, as a practical matter, obviously on de novo review, the court doesn't have to necessarily accept that at face value, because what they were doing was entering the curtilage of the yard to, quote unquote, investigate, to look for a fact. Go ahead. This is kind of a strange case. I mean, you start off with Missouri has a very robust self-help repossession rule, right? And it involves, and really very similar to North Dakota's rule, that just involves a requirement that there not be a breach of the peace. Otherwise, you can go on and come to somebody else's property, enter, take it. If it turns out to be yours, you're home free. If it turns out not to be yours, you've got troubles, right? So the police are on the scene only because they've been called, right? But in the real world, the police don't have to be present. These people could have walked in there. The gate was open. They could have walked in, grabbed the trike, and left, right? Would have been no problem. And so what the police are doing is not really facilitating anything as much as they are supposedly on scene to make sure that if there is about to be a breach of the peace, that the self-help repossession doesn't take forward. And so even though they entered to check that the VIN number's the same, it really looks like it might be a big nothing burger in the sense that what's the constitutional question? What's the nature of the search? I mean, and who's really responsible for the harm? I mean, and I know your argument's based on the theory that they aided, abetted, and somehow facilitated the self-help repossession. But if the police are not on the scene, these folks walk in, take that motorcycle or tricycle – I guess it's a trike – and haul it away anyhow. Well, I would push back on that premise because it was McKenzie and Elmore, the two people that purported to have some theoretical esoteric right on the motorcycle – they didn't even claim it was theirs – that initiated the police's response in the first place. Officer Gerhart, in his deposition, acknowledged that he was not facilitating a so-called self-help repossession. And I think that that's critical. That's in Doc 35-3 at page 14. Did he explain what he meant by that? Yes. The whole idea – I mean, he attempted to explain it. I don't think he explained it very effectively, which was, what were you doing there? If you're claiming to keep the peace, you knew at that time that Mr. Thompson, the homeowner, wasn't there. So nobody was actually threatening the peace. And that's what separates this case from Moore, which is basically the only case law that says if you're really there to just diffuse a volatile situation – that's what the words of the Eighth Circuit were in Moore – then that's a different situation. The homeowner could show up later on during the event. There could have been a possibility of an altercation. They could have by the time they showed up, but that's not when the constitutional violation occurred. The constitutional violation occurred after they knocked on the door and determined that nobody was home. Well, not now, but somebody could come home. Maybe they were just not answering the door. I mean, I think it's a little difficult to accept your hypothetical description of what was happening fully. I think that what's critical, though, is that there's under oath testimony that, again, from a summary judgment standpoint, should go to a jury at the very least. That, A, they were not executing some sort of self-help repossession, but B, and very significantly, that as a practical matter, they allowed – that was the word that was used in the record – they allowed McKenzie and Elmore to take the motorcycle. So they did facilitate it. And I challenge the premise that these two individuals who wanted the cover of the police in the first place would have just broken into the backyard and taken the motorcycle. Because by having the endorsement of the police, that brings this case much closer to the analysis in Haldol and Dixon and that line of cases where the police are actually not touching the vehicle. They're not actually taking it and taking possession of it, but they are actively allowing the seizure, the possession of property. That sounds to me like acquiescence, not assistance. What they're really saying, and I think this is a fair reading of the record, is we're not going to stop you. We've now figured out that this particular fork has the same VIN number or that this bike has the same VIN number, and we're going to allow you to take it off the property. By allowed, I mean we're not going to stop you. The problem with that, Your Honor, though, is that that is an on-site assessment without a court order, and that's what the binding precedent required, both then and now. And so the question is not whether some reasonable person could have. I don't think they actually could have. No one could have concluded that Elmore or McKenzie had a legal right to the motorcycle. The fake VIN and the fake title that they showed on a cell phone that they claimed to be the title showed that Nathan Wrench was the owner who wasn't actually there. So there was no legal basis to let these two people drive the motorcycle. Suppose Wrench had been there himself. Would the analysis change in your view at all? The analysis wouldn't legally change because, as a practical matter, it's a judge that has to make that determination, not an on-site assessment by an officer, and that's clear within the law. But it changes the analysis only factually in the sense that there was truly no basis to believe that Elmore and McKenzie had the right to drive off. I see that my time is running down if I may reserve the remainder for rebuttal. You may. Thank you. Mr. Reichhardt, when you're ready. Good morning, judges. Mr. Gelfand. Good morning. Please support. The record in this case indicates that these officers acted reasonably. This is not the question at issue. The question at issue is qualified immunity, and it's an issue that I think that the appellant is trying to dodge in this case, especially given the circumstances. I think that with the standard being that unless they violated a clearly established right such that every reasonable officer would know that their conduct was unlawful, which means that the issue with the existing precedent would have to mean that it is clear, cut and dry, beyond debate, that they were violating the homeowner's rights by doing this, then they're afforded qualified immunity. I think the briefs bear out, as well as the district courts, a very well-reasoned opinion that, based on Mr. Gelfand's arguments, this is anything but cut and dry in terms of the law. In terms of the unlawful search claim, I think the key is the context of the entry to the backyard. There's no criminal investigation going on with respect to Mr. Thompson or anyone else. These officers are there to keep the peace, and Judge Arnold, you pointed out exactly what I was thinking. You were saying, how could this not be a potentially volatile situation? That's why they're there. They're there to keep the peace. They knock on the door. They don't know if someone's in the house. They don't know when these people are going to try to take the trike, that someone's going to come storming out, or there's going to be a public disturbance. That's why they're there. They're there to keep the peace. That is a legitimate law enforcement objective that these officers were there executing at the time. You said there's no criminal investigation. There was a notation in the report, quote, the stealing of a motor vehicle. It was not completely clear to me exactly what the officer was talking about, whether he was talking about the initial fact that maybe the homeowner had stolen the vehicle, or were they talking about the fact that later the two individuals who went off with the motorcycle ended up stealing it? Yeah, that's exactly right. The stealing referred to the people who took it and Nathan Wrench, who basically duped these police officers into thinking that they owned the vehicle. But what they did do is they provided the VIN, they provided a picture of the title, that when it was double-checked by these officers, it traced back to Nathan Wrench because Mr. Thompson didn't register the vehicle in his own name. So when the VIN was run, it came back to Mr. Wrench. But, yes, Your Honor, I think you hit the nail on the head that the stealing related to Mr. Wrench had nothing to do with Mr. Thompson. He was not under investigation for a crime. This was considered to be a miscellaneous call for keeping the peace and basically a civil matter for them to be out there to make sure nothing went sideways. I'm just curious, and this may not be part of the record, so don't tell me, but was Mr. Wrench the previous owner? Because I find it hard to believe that he would just randomly show up on the registration for the vehicle. Yes, he was the previous owner. The record bears out, I believe, that Mr. Thompson bought the trike for Mr. Wrench, and Mr. Wrench sent these two people out to the scene to take it from him. They told this story that Mr. Wrench had gotten into an accident, he couldn't go out there himself. Here's the title, here's the VIN number, here's a picture of the trike. It's back there behind that open gate right there. And this is what the officers were confronted with at this point, which is having to deal with this call and getting this very convincing story, not as part of a criminal investigation against anybody at that point, including Mr. Thompson. So basically under the case law, the rule that bears out in LURE is that as pertains to the cartilage, a limited warrantless intrusion into the cartilage is not unreasonable when one legitimate law enforcement, it's a legitimate law enforcement objective which we've already gone through, and two, it's unconnected with a search directed against an accused. What do we do with the, I've been wondering about this case, and maybe it was never litigated, but the trespass theory that the court came up with in Jardines and some of these other cases where taking a dog, for example, up to the door is a trespass and therefore a search. Does that just not apply here for some reason, or was it never litigated? But it seems to me that there's at least some sort of Fourth Amendment issue just based on the fact that they trespassed into the cartilage. So I guess I'm not familiar with the trespass theory you mentioned, Your Honor. I can tell you this is very similar to what we see in LURE, which is a taxi driver called the police, and he said, hey, I just had a drunken person in my cab who got out, ran away without paying his tab. So the officers went and had an intrusion onto the cartilage of several residences, including plaintiffs, but then ultimately went into plaintiff's house with guns drawn. And so the court took this and dealt with the two different areas differently. It's very much different to cross that threshold of the house with guns drawn versus a limited – and it wasn't an investigation asked of those plaintiffs – a limited intrusion onto the cartilage. But it's a different kind of a search, too, right? I mean, this is a person who has fled not paying, and so there is a crime afoot. There is a search related to a crime, whereas here there's been a disclaimer of any criminal search. What it is is identification of the property, right? And so when you break the cartilage to enter the property, you're not searching with the idea that you're searching for evidence of a crime or to prosecute a crime. You're looking to identify the property because what they have is a photograph, looks like the trike. Then they have a title on a phone, which, you know, it's got a VIN number on it. And so they're going to go identify that fork number, that VIN number, and they're going to take a look at the bike. It doesn't have anything to do with the kind of, you know, searching that we ordinarily think of that's directed towards a person or evidence of a crime. Exactly, Judge. And the fact that the officers are there, who knows what – as you mentioned, too, who's to say that these individuals aren't going to go back there and try to take the trike if the officers refuse to show up? I mean, so the officers are out there to make sure nothing goes sideways. We don't know if it's going to be a potential threat. Yes, Judge? The thing that occurs to me is if the officers were really participating in this to the extent that they were checking the VIN numbers and the rest of that, doesn't that show that they were doing something more than acquiesce? Doesn't it show an active participation in the taking? Well, Judge, if this goes to the – well, so count two of Mr. Thompson's petition. It was an unlawful seizure claim, which the officers also had qualified immunity on per the district court. And so that issue is basically that. My suggestion is it was a certain amount of activity, positive activity on the part of the police, evidenced by the fact that they were trying to determine whether there might be some sort of colorable claim of right. Thanks for bringing me back between the lines here because I lost my train of thought.  No, I lost my train of thought, but what I was going to explain is basically as for that seizure, what you're getting at is the unlawful seizure here. The cases that Mr. Thompson presents as to why it's a seizure involves police officers going out on scene and preventing someone from protecting or keeping their own property. Like, hey, I'm out here. I'm not going to let you – like let's say Mr. Thompson was there and these officers held him back, said, you know, you better stay away or else we're going to let these people take the trike. Then it would be a different question. And I think that's kind of exactly what we don't have here is Mr. Thompson's not there. These officers aren't engaged in the type of forcible conduct that you see in those two cases, Soledal and Dixon, that were talked about as to that second count. I'm not sure that those cases establish the principle that kind of forcibleness is necessary. Reliability is just sufficient. Well, I guess at that rate, I would just wonder what exactly the seizure would be by the officers because I don't think that acquiescence into a private citizen taking the bike amounts to a government seizure in this case. I agree with that. My suggestion is that because the police were essentially taking a kind of side, that is inquiring into the validity of the claim of right by the homeowner, although the homeowner was absent, or rather the validity of the claim of right of the people who were taking the motorcycle. That seems to me could give rise to an inference that they were actively participating in the event, not merely acquiescence. But never mind, that's all right. So I want to get back to my original question because I had a follow-up to it, which is suppose they had gone into the backyard and spotted a bunch of guns. The homeowner might have said, well, that's my backyard. Nobody gets to go in there. It's gated off and the officers went in there anyways. Would that be admissible? This is why the trespass theory exists, by the way. Well, I would think that might be a different question than as to the admissibility of, well, yeah. I mean, that's the problem I'm having is you're going in for a civil purpose, but by going in for a civil purpose, it's going to reveal any illegality, and then it would be admissible under plain view. Now, maybe your answer is this was not litigated under the trespass theory and it was never brought up. That's fine that we don't address it. But I do have some concerns about the trespass here into the private areas of the home. Well, I can tell you this is not something, as you can tell by my unpreparedness to answer this question, it's not come up in this case. It hasn't come up in this case, and I assume my time's up. Thank you, Your Honors. Thank you. And I'm going to start where I ended. Has the trespass theory ever come up in this case at all as a way of litigating it or saying that there's a constitutional violation here? Normally, it's right. It comes up in the criminal context, but I just want to know whether this was litigated that way. Yes, Your Honor. It's the primary basis as to count one as opposed to counts two and three of the pending complaint in this case. And the idea here is precisely that it is a trespass, that there's no legal basis for the police to step foot onto the cartilage. And I agree with what the court was asking a few minutes ago to my opposing counsel, which is in the event this was a criminal case and they saw some evidence of criminality in plain view, the prosecutor would no doubt argue that that's an exception to the warrant requirement and we'd be right where we are with this case, which is, but were they legally standing in a place where they saw the item in plain view in the first place? Because that would be the Fourth Amendment analysis. That's why the Fourth Amendment exists here, and that's why this is an important case as a matter of principle. As a practical matter, I think that unlike the typical, so to speak, trespass theory cases, this is particularly egregious because there's a disputed fact that shouldn't be taken for granted, and that's whether the gate was open or not open. The testimony by the officers was that the gate was open when they arrived. Mr. Thompson's under oath testimony when he left for the day was that the gate was closed, even corroborated by the fact that he had a dog that he didn't want to get away and he was concerned about. I'm looking at count one, and I'm having a hard time finding that's a trespass claim. It's entitled unlawful search claim, and it says under the Fourth Amendment of the United States Constitution, Thompson has a right not to be subjected to an unreasonable search. Then you go through, and he talks about the facts, and he talks about who was there and who did what. But in the end, they said that they had a reasonable expectation of privacy, and that doesn't sound to me like common law trespass. That sounds to me like plain, old-fashioned Fourth Amendment stuff. Your Honor, and I say I'm out of time if I may answer the court's question. As a practical matter, the way that this was litigated through discovery and through summary judgment was that, similar to a trespass theory, they had no basis after the curtilage in the first place. You're looking for a constitutional tort to hold somebody liable under, right? Under 1983. Yeah, and so you're pleading constitutional torts, not trespass. Under 1983, but I think that the trespass concept, the theory of liability, very much factors into the entire theory that plaintiff advanced in this case, which is they didn't have the right to be standing there in the first place. To be clear, we embrace qualified immunity. We don't dodge it, and we believe that these premises were clearly established beyond any debate as of 2022. For those reasons, we asked the court to, at a minimum, reverse the grant of summary judgment and remand so that these factual questions can be litigated. Thank you. Thank you. The court will take the matter under advisement. The court appreciates your briefing and argument, and we will render an opinion in due course. Thank you very much. Thank you. Clerk will call the next case.